**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| FLIGHT TEST AVIATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.a. No.: 1:13-cv-145-AJT/JFA |
| | ) | |
| SCOTT A. BEALE, | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMENDED COMPLAINT**

Flight Test Aviation, Inc. ("FTA") hereby files its Amended Complaint against Scott A. Beale and alleges as follows.

**PARTIES**

1.      Plaintiff, Flight Test Aviation, Inc. ("FTA") is a Delaware corporation whose principal place of business is at 5175 Parkstone Drive, Suite 150, Chantilly, Virginia 20151.

2.      Aerodynamics, Inc. ("ADI") is a Michigan corporation whose principle place of business is at 6544 Highland Road, Waterford, Michigan.

3.      Defendant, Scott A. Beale ("Beale"), is an individual whose is a citizen of the state of Georgia, and whose last known address was c/o ADI Shuttle Group, LLC, 6544 Highland Road, Waterford, Michigan 48327.  Beale was at all times relevant thereto the Chief Executive Officer of ADI.

US_ACTIVE-112813599

## JURISDICTION

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between the Plaintiff and all of the Defendants and that the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## ALLEGATIONS

6.     James Paquette ("Paquette") is the President and owner of FTA.

7.     From on or about January 2010 FTA and Paquette worked with and had an ongoing relationship with ADI.  In or about August 2011 Beale, through a company called ADI Holdings Company, Inc. acquired ADI, and FTA continued along with its relationship, albeit with a new owner.

8.     In or about 18 April 2012, Beale approached FTA, through Paquette, with a request for financial assistance.  Beale said that ADI had an immediate need for cash that could be returned within 60 days.  When Paquette did not agree to that request, Beale said that ADI had invested nearly $1 Million in a program to certify an EMB-145 aircraft to be used for air charter purposes.  According to Beale, ADI had a local investor drop out of the project and he needed to find another investor.  Beale offered that in exchange for the $500,000, FTA could participate directly in and become an investor in the EMB-145 program.

9.     Paquette said that FTA was not in the venture capital business, and could not risk such funding.  Beale then asked what Paquette needed in order to provide the money.  Paquette said that he needed assurance that ADI had a contract that provided for a guaranteed minimum number of flight hours, and that FTA would not incur any future additional costs or expenses.

- 2 -

Beale then orally represented that ADI in fact had a contract with a company called Rectrix Aviation to charter the EMB-145 aircraft which guaranteed a minimum of 720 annual hours with revenue generating service starting in the near term, and he would agree that FTA would not incur any future costs.  Beale stated that he could prepare an information package for FTA that addressed these issues. These representations were material facts necessary for FTA to agree to provide the funding requested.

10.     Based on these representations made by Beale, FTA agreed to the venture and FTA wired $100,000 to ADI on or about April 25, 2012. Exhibit 1.

11.     On or shortly after April 30, 2012, FTA received a proposed joint venture agreement from ADI and addressed to Flight Test Partners, LLC.  (Exhibit 2)  FTA did not execute this proposed agreement for, among other reasons, it had named the wrong party.  The agreement was put in the name of Flight Test Partners, LLC, and should have been in the name of FTA which paid the money to ADI.

12.     This proposed agreement did, however, repeat the earlier oral representations made by Beale to FTA and on which it relied in paying the $100,000, and upon which FTA continued to rely continued with the joint venture and sent another $400,000. The proposed agreement said that:

> ADI has secured a contract with Rectrix Aviation for a one year contract with multiple follow on renewal periods.  This contract revenue begins July 1st and will provide the projected ROI [return on investment] in the proposal dated April 18th, 2012.
>
> . . . .
>
> Revenue service begins July 1st [2012] on the Embraer 145 for Rectrix Aviation and on demand charter activity.  ADI will supply Flight Test Partners with the final agreement between ADI and Rectrix.

Exhibit 2 at 2, 3.  From that date through on or about May 15, 2012, Paquette and Beale had several

- 3 -

conversations about the Rectrix contract, during which time Beale never said that this contract did not exist.

13.    On May 29, 2012, FTA sent ADI its second payment of $400,000 for a total of $500,000, and thereby completed the payments due from it under the joint venture, with the understanding that ADI had a contract with Rectrix which provided the guaranteed minimum number of hours and revenue starting on or about July 1, 2012. Exhibit 3.

14.    Contrary to the affirmative representations made by Beale and ADI, ADI did not have a contract with Rectrix.  In fact, these representations were false and known by Beale at the time they were made to be false.  ADI never had the contract represented with Rectrix.

15.    Had FTA known that ADI did not have a contract with Rectrix it would never have paid the $500,000 to FTA.

16.    When FTA learned of the false statements and/or omissions by Beale and ATI, FTA demanded the return of its $500,000.  Both ATI and Beale have refused to refund and return FTA's money.

17.    ADI's offer for sale and sale to FTA of this partnership interest in a joint venture was the offer for sale and sale of a security. FTA invested money in a common enterprise, with the expectation of profit, which profit was to come solely through the efforts of others.  FTA was not to have any involvement in the management or decision making of this enterprise.

18.    On or about January 7, 2013, ADI filed a petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan.

## COUNT I
### (Virginia Security Violation)

19.    FTA realleges paragraphs 1 – 18.

- 4 -

20.    The sale by or the offer of sale by Beale and ADI of the interest in a partnership or an investment contract for $500,000 was the sale of a "security" under Virginia Code §13.1-501.

21.    Pursuant to Virginia Code§ 13.1-502 it is unlawful for anyone to sell or offer to sell a security directly or indirectly by employment of any device, scheme or artifice to defraud or to obtain money by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading.

22.    Pursuant to Va. Code § 13.1-522.A. any person who sells a security in violation of § 13.1-502 or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading shall be liable to the person purchasing such security from him to recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs and reasonable attorneys' fees.

23.    Pursuant to Va. Code § 13.1-522.C. every person who directly or indirectly controls a person liable under § 13.1-522.A., including an officer or director of such a person or every employee who materially aids in the conduct giving rise to the liability shall be jointly and severally liable to the same extent as ADI.

24.    Beale is directly liable as the person who sold the security to FTA and/or is jointly and severally liable as he directly or indirectly controlled ADI, was an officer or director of ADI and/or an employee who materially aided in the conduct giving rise to the liability.

## COUNT II
### (Michigan Security Violation)

25.    FTA realleges paragraphs 1 - 18.

26.    The sale by or the offer of sale by Beale and ADI of the interest in a partnership or an investment contract for $500,000 was the sale of a "security" under Michigan Statutes §451.2102c.

27.    Pursuant to Michigan Statutes § 451.2501 it is unlawful for anyone to sell or offer to sell a security directly or indirectly by employment of any device, scheme or artifice to defraud or to obtain money by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading.

28.    Pursuant to Michigan Statutes § 451.2509 any person who sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading shall be liable to the person purchasing such security from him to recover the consideration paid for such security, together with interest thereon at the annual rate of six percent, costs and reasonable attorneys' fees.

29.    Pursuant to Michigan Code § 451.2509 every person who directly or indirectly controls a person liable under § 451.2509 shall be jointly and severally liable to the same extent as ADI.

30.    Beale is directly liable as the person who sold the security to FTA and/or is jointly and severally liable as he is directly or indirectly controlled ADI.

## COUNT III
### (Fraud)

31.    FTA realleges paragraphs 1 – 18.

32.    At the time Beale told Paquette that Rectrix had a contract with ADI with the terms described above, Beale knew that Rectrix did not have such a contract with Rectrix.

- 6 -

33.     These statements by Beale were false and material and/or failed to state the true facts and were known at the time by Beale to be false and misleading.

34.     Beale had a duty to disclose to FTA that there was no Rectrix contract and/or that any such contract was conditional or qualified on Rectrix acquiring a landing slot at LaGuardia Airport.  Beale failed to disclose these facts to FTA prior to FTA's payment of $500,000.

35.     At the time Beale made these false statements to FTA and/or failed to inform FTA of the true facts, he intended that FTA rely on them to provide money to ADI.

36.     FTA reasonably relied on the statements of fact made by Beale when it paid its $500,000 to ATI.

37.     Had FTA known the true facts it would not have paid its $500,000 to ATI.

38.     FTA has been damaged in the amount of $500,000, plus interest and its costs.

39.     Beale acted with actual malice toward FTA.  At the time Beale made his false representations about a contract between ADI and Rectrix, Beale knew that ADI did not have a contract with Rectrix and further knew that Rectrix did not even have a gate at LaGuardia Airport for any flights for which it might charter ADI's aircraft.  Beale continued to lie to Paquette telling him that the risk to acquire the gate was all on Rectrix, and that regardless it was still obligated for the minimum number of hours. This was a false representation. Additionally, Beale stated several times that he would send or had sent a copy of the Rectrix contract to FTA, but no such contract was ever sent, as it never existed.  This was done to delay or put off FTA from realizing that it had been defrauded out of its $500,000.  Beale's actions were so reckless or negligent as to evince a conscious disregard for FTA's rights, and he acted wantonly, oppressively or with such malice as to evince a spirit of mischief or criminal indifference to his civil obligations.  Accordingly, FTA is entitled to punitive damages.

## COUNT IV
## (Constructive Fraud)
## Alternative to COUNT III

40.     FTA asserts this claim of constructive fraud in the alternative to the fraud claim in Count III.

41.     FTA realleges paragraphs 1 – 18.

42.     At the time Beale told Paquette that ADI had a contract with Rectrix with the terms described above and failed to state the true facts, he made that false representation or failed to state the true facts negligently and/or innocently.

43.     These statements by Beale were false and material and/or failed to state the true facts and were known by Beale to be false and misleading.

44.     Beale had a duty to disclose to FTA that there was no Rectrix contract and/or that any such contract was conditional or qualified on Rectrix acquiring a landing slot at LaGuardia Airport.  Beale failed to disclose these facts to FTA prior to FTA's payment of $500,000.

45.     At the time Beale made these false statements to FTA and/or failed to inform FTA of the true facts, he intended that FTA rely on them to provide money to ADI.

46.     FTA reasonably relied on the statements of fact made by Beale when it paid its $500,000 to ATI.

47.     Had FTA known the true facts it would not have paid its $500,000 to ATI.

48.     FTA has been damaged in the amount of $500,000, plus interest and its costs.

## PRAYER FOR RELIEF

Wherefore, Flight Tests Aviation, Inc. asks for a trial by jury of all matters subject to a trial by jury, and requests that the Court award it damages and relief as follows against Scott A. Beale:

1.    Compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000);

2.    Punitive damages in the amount of Three Hundred Fifty Thousand Dollars ($350,000);

3.    Prejudgment interest at six percent (6%), costs and reasonable attorneys' fees.

4.    Such other relief as the Court deems just and proper.

Respectfully submitted,

FLIGHT TEST AVIATION, INC.
By Counsel

_____/s/_____
Joseph S. Luchini, Esq.
Virginia Bar No. 13566
Stacey C. Forbes
Virginia Bar No. 80369
Reed Smith LLP
3110 Fairview Park Drive
Suite 1400
Falls Church, Virginia 22042
Telephone: (703) 641-4200
Facsimile: (703) 641-4340
jluchini@reedsmith.com
sforbes@reedsmith.com
*Counsel for Flight Test Aviation, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Jonathan S. Gelber, Esq.
> Virginia Bar No. 23922
> Attorney for Scott A. Beale
> Law Offices of Jonathan Gelber, PLLC
> 100 North Washington Street, Suite 402
> Falls Church, Virginia 22046
> Telephone: (703) 237-1200
> Facsimile (703) 237-2775
> jongelber@northernvirginialitigator.com

/s/ _____

Joseph S. Luchini
Virginia Bar No. 13566
Stacey C. Forbes
Virginia Bar No. 80369
Counsel for Flight Test Aviation, Inc.
Reed Smith LLP
3110 Fairview Park Drive, Suite 1400
Falls Church, Virginia  22042
Telephone: (703) 641-4200
Facsimile: (703) 641-4340
jluchini@reedsmith.com
sforbes@reedsmith.com
