IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FLIGHT TEST AVIATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:13-cv-145 (AJT/JFA) |
| ) | |
| SCOTT A. BEALE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## ORDER

On February 1, 2013, the plaintiff, Flight Test Aviation, Inc. ("FTA") filed a three count

Complaint [Doc. No. 1] against defendant, Scott A. Beale ("Beale"), alleging a violation of the

Virginia Blue Sky Law, Va. Code § 13.1-502 (Count I), a violation of the Michigan Blue Sky

Law, Mich. Comp. Laws § 451.2501 (Count II), and common law fraud (Counts III and IV).[1]

This matter is before the Court on FTA's Motion for Summary Judgment [Doc. No. 56], as

amended [Doc. No. 59] (the "Motion"). Beale, currently appearing *pro se,* has answered, as

required, and has received the required *Roseboro* notice with respect to the Motion. He has not,

however, filed any response to the Motion and did not appear at the hearing held on the Motion

on October 2, 2013. For the reasons set forth herein, the Motion will be GRANTED in part and

DENIED in part.

## Background

The Court finds the following facts undisputed pursuant to Local Civil Rule 56(B):

---

[1] On May 21, 2013, plaintiff filed a Motion for Leave to File an Amended Complaint [Doc. No. 39]; and on May 28, 2013, the Court entered the Agreed Order [Doc. No. 43] granting the motion for leave to file. The same day, plaintiff FTA filed its Amended Complaint [Doc. No. 44], in which FTA alleges the same three counts and requests $500,000 in compensatory damages, $350,000 in punitive damages, pre-judgment interest at a rate of 6%, and costs and reasonable attorneys' fees. On June 10, 2013, defendant filed his answer [Docket No. 47] to the Amended Complaint.

Beginning in January, 2010, James Paquette ("Paquette"), the President and owner of FTA, had an ongoing relationship with Aerodynamics, Inc. ("ADI"). In August 2011, Beale acquired ADI through a company called ADI Holdings Company, Inc; and the relationship between ADI and FTA continued after the change in ownership. On April 18, 2012, Beale approached FTA, through Paquette, with a request for financial assistance. He told Paquette that ADI had an immediate need for cash after investing nearly $1 million in a program to certify an EMB-145 aircraft that would be used for air charter purposes. Beale told Paquette that if FTA provided $500,000, it could participate directly in and become an investor in the EMB-145 program. Paquette told Beale that FTA was not in the venture capital business and could not fund the project absent assurance that ADI had a contract providing for a guaranteed minimum number of flight hours, and that FTA would not incur any future additional costs or expenses. In response, Beale orally represented that ADI had a contract with Rectrix Aviation ("Rectrix") to charter the EMB-145 aircraft and agreed that FTA would not incur future costs. He also represented that the Rectrix contract guaranteed a minimum of 720 annual hours with revenue generating service starting in the near term.

On April 25, 2012, based on the representations made by Beale, FTA wired $100,000 to ADI. On April 30, 2012, and again on May 27, 2012, Beale sent to FTA proposed joint venture agreements from ADI. The agreements repeated the earlier oral representations made by Beale concerning the Rectrix contract. Between April 18, 2012 and May 15, 2012, Paquette and Beale had several conversations about the Rectrix contract, during which Beale never disclosed that no contract had been consummated but rather that the contract was "moving forward." On May 29, 2012, FTA sent ADI $400,000, on the understanding that ADI had a contract with Rectrix which

provided for the guaranteed minimum number of hours and revenue starting on or about July 1, 2012.

Contrary to the affirmative representations he made orally and in the proposed joint venture agreements, ADI did not have a contract with Rectrix and no such contract ever existed; and Beale knew at the time he made those representations to Paquette that no Rectrix contract existed as represented. FTA relied on Beale's misrepresentations and as a result paid to ADI the sum of $500,000 that it would not have otherwise paid. Upon learning that Beale had misled it, FTA demanded that the $500,000 be returned. ADI failed to return the money to FTA and the present litigation ensued.

## Standard of Review

Summary judgment should be granted where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Bryant v. Bell Atlantic Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002). Entry of summary judgment is appropriate where the moving party demonstrates the lack of a genuine issue of fact for trial, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex Corp. v. Catrett,* 477 U.S.317, 324 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247-248. Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Nevertheless, the Court

must also affirmatively conclude that judgment as a matter of law is appropriate, even though, as here, the Motion is unopposed. *Maryland v. Universal Elections, Inc.*, 2013 WL 3871006 (4th Cir. July 29, 2013) (citing *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n. 8 (4th Cir.2010) ("[I]n considering a motion for summary judgment, the district court 'must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.'").

## Analysis

Counts I and II are state securities claims under the Virginia and Michigan Blue Sky laws prohibiting the use of misleading or fraudulent statements in the offer or sale of securities. *See* Va. Code §13.1-502; Michigan C.L.A. § 451.2102(c). Under both states' securities laws, the definition of "security" derives from the definition of that term under the federal Securities Act of 1933; and for that reason, the courts of both Virginia and Michigan have looked to the federal courts' interpretation of the term "security," as defined U.S.C.A. § 77b(1), in interpreting the term "security" under its state securities laws. *See Andrews v. Browne*, 276 Va. 141, 147, 662 S.E. 2d 58, 62; *People v. Breckenridge*, 81 Mich. App. 6, 16, 263 N.W.2d 922, 927 (1978).

As the United States Supreme Court has repeatedly confirmed, "the basic test for distinguishing the transaction [involving a security] from other commercial dealings is 'whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.'" *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852, 95 S. Ct. 2051, 2060, 44 L. Ed. 2d 621 (1975) (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301, 66 S. Ct. 1100, 1104, 90 L. Ed. 1244 (1946)). The only issue here is whether the record before the Court establishes as a matter of law that the proposed joint venture agreement constitutes the offer or sale of a "security."

Because a joint venture is essentially a single purpose partnership, in Virginia, as elsewhere, the rules and laws governing joint ventures and partnerships are "essentially the same." *Roark v. Hicks*, 234 Va. 470, 475, 362 S.E.2d 711, 714 (1987) (quoting *Burruss v. Green Auction Co.*, 228 Va. 6, 10, 319 S.E.2d 725, 727 (1984)). A general partner typically has the right to participate in the governance of the partnership and ultimately exercise some degree of control over the partnership affairs. For this reason, "[g]eneral partnerships ordinarily are not considered investment contracts because they grant partners-the investors-control over significant decisions of the enterprise." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). In *Rivanna Trawlers, supra*, the Fourth Circuit quoted with approval the following from *Williamson v. v. Tucker*, 645 F.2d 404, 424 (5th Cir. 1981):

> [A] partnership can be an investment contract only where the partners are so dependent on a particular manager that they cannot replace him or *otherwise* exercise ultimate control (emphasis added).
> Only when this degree of dependence by the partners exists is there an investment contract. Moreover, the court [in *Williamson*] emphasized that '[t]he delegation of rights and duties-standing alone-does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test.' In other words, the mere choice by a partner to remain passive is not sufficient to create a security interest. The critical inquiry is, 'whether the powers possessed by the [general partners] in the [partnership agreement] were so significant that, regardless of the degree to which such powers were exercised, the investment could not have been premised on a reasonable expectation of profits to be derived from the management efforts of others.

*Rivanna Trawlers* at 240-241 (internal citations omitted). The Fourth Circuit concluded, based on *Williamson* and other cases, that "only under certain limited circumstances can an investor's general partnership interest be characterized as an investment contract. A court must examine the partnership agreement and circumstances of a particular partnership to determine the reality of the contractual rights of the general partners." *Rivanna Trawlers*, 840 F.2d at 241.

Here, the proposed joint venture agreement allocated responsibility for startup expenses and protected FTA from certain additional expenses.[2] It also delegated to ADI "all FAA and operational responsibilities throughout this agreement." However, it also provides that the parties will evenly split the monthly profits and that "ADI shall provide Jim Paquette with a monthly financial report on the joint venture project.... " ADI also committed to making "its operational staff available to Jim Paquette to discuss any questions or concerns regarding the operation and its operational or financial status." Most important is that there is nothing in the proposed joint venture agreement that would divest or restrict the plaintiff's legal rights as a joint venture partner to participate in and exercise control over "significant decisions of the enterprise." Viewing the undisputed facts most favorably to the defendant, as required, the summary judgment record is insufficient to find and conclude as a matter of law that the proposed joint venture agreement was, in fact, a security under either Virginia or Michigan law; and for these reasons, the Court will deny the motion as to Counts I and II.

The plaintiff also seeks summary judgment as to its claim for actual fraud, set forth in Count III, or, in the alternative, for constructive fraud, set forth in Count IV. In Virginia, a party may recover for either actual or constructive fraud. To prevail on an actual fraud claim under Virginia law, a plaintiff must prove by clear and convincing evidence: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387, 390 (1994). A party may recover under a theory of constructive fraud where misrepresentations are made without specific fraudulent intent but made with reckless abandon and disregard for the truth. *See Bradley v.*

---

[2] The proposed joint venture agreements provide that the parties agree to "split 50/50 [the $1 million in] startup expenses by reimbursing ADI for $500,000", and that "ADI will be responsible for any startup expenses beyond $1.0 million and any future monthly losses."

*Tolson*, 117 Va. 467, 85 S.E. 466, 467 (1915).  Constructive fraud differs only in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently; the plaintiff must still prove the other elements of actual fraud—reliance and detriment—by clear and convincing evidence. *See Evaluation Research Corp.*, 439 S.E.2d at 390.

Here, the undisputed facts establish that Beale engaged in actual fraud, rather than merely constructive fraud.  He repeatedly and falsely represented that he had a contract for a guaranteed minimum number of flight hours with Rectrix when he knew at the time of those representations that no such contract existed.  The misrepresentations were clearly material to plaintiff's decision to contribute the funds and had no ostensible purpose other than to mislead the plaintiff into thinking that the conditions for its contribution had been satisfied.  The undisputed facts also establish that the plaintiff relied on the false statements of fact that ADI had a contract with Rectrix and that under all the circumstances, including its established and on-going relationship with ADI, such reliance was sufficiently justified as a matter of law.  There is also no question that plaintiff was damaged in the amount of $500,000 as a result of these misrepresentations.  For these reasons, the Court will grant plaintiff's Motion with respect to its claim for $500,000 under Count III and dismiss Count IV as moot.

Plaintiff also seeks summary judgment as to liability for punitive damages under Count III.  In Virginia, punitive damages may be recovered on a common law fraud claim only upon "proof, either direct or circumstantial, showing actual malice." *Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 234 (4th Cir. 2007) (quoting *Jordan v. Sauve*, 219 Va. 448, 247 S.E.2d 739, 741 (1978)).  "Actual malice" has been defined as "ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another." *Jordan*, 219 Va. at 234.  Upon

review of the summary judgment record, when viewed most favorably to the defendant, the Court cannot conclude as a matter of law that plaintiff is entitled to a recovery of punitive damages under the applicable legal standard. On the one hand, the defendant clearly misrepresented material facts in connection with his solicitation of FTA's $500,000, used the $500,000 to reduce ADI's and Beale's financial obligations under its lines of credit, and failed to account for or share any of the revenues actually generated after plaintiff's contribution by chartering the aircraft that was the subject of the proposed joint venture; and certain adverse inferences can be drawn from those facts in support of plaintiff's punitive damages claim. However, on the other hand, there was a letter of intent dated March 29, 2012 between ADI and Rectrix, and the evidence presented in the summary judgment record suggests that Beale expected the contract contemplated by the letter of intent to be consummated at the time that he originally solicited FTA's funds on April 18, 2012. The record does not reflect what the status of the Rectrix contract was on April 25, 2012 when FTA forwarded $100,000 at the request of ADI, during the conversations between Beale and Paquette between April 18, 2013 and May 15, 2012, on May 27, 2012 when the revised proposed joint venture agreement was sent to FTA, or on May 29, 2013, when FTA sent the $400,000 to ADI. The record does show, however, that beginning on May 24, 2013 through October 15, 2012, ADI, in fact, chartered the aircraft that was the subject of the contemplated joint venture for gross revenues in excess of $600,000. The record also shows that Beale disclosed that his company was in immediate need of funds at the time he solicited the plaintiff's contribution; and the proposed joint venture agreement, in fact, contemplated that the $500,000 would be used to reimburse ADI for FTA's share of ADI's $1,000,000 startup expenses, which presumably were reflected, at least in part, in the monies owed under its lines of credit, toward which plaintiff's contribution was applied. It is also a

reasonable inference that there were no profits generated by the actual chartering of the aircraft and ADI was not financially able to return plaintiff's funds. Based on the record, the Court cannot find and conclude as a matter of law that Beale acted with "actual malice" toward plaintiff; and its motion for summary judgment as to defendant's liability for punitive damages as a matter of law will be denied.

Upon consideration of the Motion [Doc. Nos. 56 and 59], the memoranda and exhibits filed in support thereof, and the argument of counsel at the hearing held on October 2, 2013, and for the reasons stated herein and in open court, it is hereby

ORDERED that the Motion as to Counts I and II be, and the same hereby is, DENIED; and it is further

ORDERED that the Motion as to Count III for actual fraud be, and the same hereby is, GRANTED in part and DENIED in part. The motion is granted as to plaintiff's claim for compensatory damages in the amount of $500,000, with pre-judgment interest, and denied as to its claim for punitive damages; and it is further

ORDERED that the Motion as to alternate Count IV for constructive fraud be, and the same hereby is, DENIED as moot; and it is further

ORDERED that plaintiff advise the Court on or before November 15, 2013, whether it intends to proceed to trial on December 2, 2013 as to Counts I and II and its punitive damages claim in Count III.

The Clerk is directed to forward copies of this Order to all counsel of record and to

defendant Scott Beale, *pro se*.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 11, 2013