IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FLIGHT TEST AVIATION, INC.,           )
                                      )
                 Plaintiff,           )
                                      )
v.                                    )       Case No.  1:13-cv-145 (AJT/JFA)
                                      )
SCOTT A. BEALE,                       )
                                      )
                 Defendant.           )
                                      )
_____)

## ORDER

Plaintiff Flight Test Aviation ("FTA") sued defendant Scott A. Beale ("Beale") for fraud in connection with a certain joint venture that had been proposed by Beale.  The case was tried with a jury beginning on July 14, 2014 and on July 15, 2014, the jury returned a verdict in favor of FTA in the amount of $500,000 in compensatory damages and $100,000 in punitive damages. Following the verdict, Beale timely filed Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for Remittitur of Punitive Damages [Doc. No. 134] and FTA timely filed Plaintiff's Motion for Attorney's Fees [Doc. No. 131].  The Court held a hearing on these motions on September 18, 2014, following which it took the motions under advisement.  Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, and the arguments of counsel at the hearing on these motions, and for the reasons stated herein, both motions are DENIED.

     1.    Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for Remittitur of Punitive Damages [Doc. No. 134]

Under Fed. R. Civ. P. 50(a), a party is entitled to judgment as a matter of law only if "there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."  The Fourth Circuit Court of Appeals has further elaborated: "[t]o

grant the motion the district court must examine the evidence in the light most favorable to the nonmoving party and determine 'whether a reasonable trier of fact could draw only one conclusion from the evidence.'" *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994) (quoting *Townley v. Norfolk & Western Ry. Co.*, 887 F.2d 498, 499 (4th Cir. 1989)). The standard used when ruling on a motion for judgment as a matter of law is whether the jury's verdict is unsupported by any substantial evidence. *Ellis v. Internat'l Playtex, Inc.*, 745 F.2d 292, 298 (4th Cir. 1984).

Defendant moves for judgment as a matter of law on two grounds. First, Defendant argues that, as a matter of law, FTA had no "standing" since the undisputed evidence was that the fraudulently induced investment was being made personally by James Paquette, its President and owner, rather than FTA, and for that reason, only Paquette, not FTA, had been defrauded. Second, Defendant contends there was insufficient evidence to support the finding that the first $100,000 was induced by fraud.[1]

The evidence viewed most favorably to the plaintiff is that Beale's company, Aerodynamics Inc. ("ADI"), needed additional funds and Beale initially solicited those funds from FTA, through Paquette, and made certain representations to Paquette for that purpose, found by the jury to be false. Based on Beale's misrepresentations, Paquette caused the first payment of $100,000 to be made to ADI from FTA funds, following which Beale tendered a Joint Venture Agreement ("JVA") to Paquette, listing FTA as ADI's joint venture partner. Thereafter, Paquette directed Beale to revise the JVA to list him personally as the joint venture partner, rather than FTA. Beale did so and, although Paquette never signed it, the remaining

---

[1] Although this grounds for challenging the judgment was raised only in a footnote in Defendant's brief, the Court will, nevertheless, address it.

2

$400,000 was transferred from FTA's account to ADI with the approval of FTA's chief financial officer.

There is no dispute that the statements that the jury found fraudulently induced the payment of $500,000 were made to Paquette and that defrauded funds were paid directly from FTA to ADI, Beale's company. Viewed most favorably to FTA, the evidence was sufficient for the jury to find that Beale made false statements to Paquette, and that when the false statements were made, Beale knew that Paquette was FTA's President. Beale directed those false statements to Paquette as FTA's authorized agent, communicating throughout with Paquette by e-mails, which were sent to both Paquette's FTA account and his personal account. Beale intended those statements to be relied upon by both Paquette and FTA; in reliance on those false representations, FTA, acting through its President, Paquette, and its chief financial officer, delivered FTA funds to Beale and was damaged as a result. That Paquette may ultimately bear the loss personally or that FTA may have some claim against him for those funds does not change the fact that, in the first instance, FTA was damaged. In a sense, the evidence supported a fraud claim against Beale by both FTA and Paquette. For these reasons, a reasonable jury could find that FTA, acting through its agent Paquette, was the party damaged by Defendant Beale's fraud, and the Court concludes that FTA had standing to bring its fraud claim against Beale. Accordingly, there was sufficient evidence from which a reasonable jury could conclude that Plaintiff FTA was the party defrauded and damaged by Beale's conduct.

In addition, the Court has reviewed the evidence concerning the payment of the first $100,000 according to the applicable standard and determined that the evidence was sufficient to support the jury verdict. Viewed most favorably to the plaintiff, the evidence is that Beale represented to Paquette that a contract existed between ADI and a third-party, Rectrix, when

3

Beale knew that no such contract existed and that the first $100,000 would not have been paid without that misrepresentation. Accordingly, there was sufficient evidence to support the jury's verdict.

As to the punitive damages claim, the Court must also deny defendant's motion for judgment as a matter of law or remittitur. In reviewing the amount of punitive damages awarded, the Court must consider the "reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, whether the award will amount to a double recovery, the proportionality between the compensatory and punitive damages, and the ability of the defendant to pay." *Poulston v. Rock*, 467 S.E. 2d 479, 484 (Va. 1996) (citations omitted). Virginia common law allows punitive damages "where there is misconduct or malice, or such recklessness or negligence as evinces a conscious disregard of the rights of others," and "for the protection of the public, as punishment to defendant, and as a warning and example to deter him and others from committing like offenses." *Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 695 (E.D. Va. 1990).

Here, viewing the evidence most favorably to FTA, a reasonable jury could have concluded that Beale's conduct evidenced "a conscious disregard for the rights of others" and an an award of punitive damages in this case is consistent with its goal to serve as a deterrent to such conduct. *See id.* at 696 (reasoning that the purpose of punitive damages includes the notification to others who would engage in such fraudulent conduct "that the wages of this sin are prohibitively high") A concern for double recovery is not an issue, as the relationship between $500,000 in compensatory and $100,000 in punitive damages is not unreasonable or strikingly out of proportion. There was little evidence concerning defendant's current financial situation other than that he had recently exited personal bankruptcy. Nevertheless, the jury

4

received unchallenged instructions on the standards for awarding punitive damages; and while the evidence included little beyond what would be shown in any successful fraud case, the evidence was sufficient for the jury to find that punitive damages were appropriate under the instructions given.

2. Plaintiff's Motion for Attorney's Fees [Doc. No. 131]

Attorneys' fees are generally not awarded to the prevailing party except when provided for by statute or contract. *Prospect Development Co., Inc. v. Bershader, et al.*, 515 S.E. 2d 291, 300–01 (Va. 1999). However, the Supreme Court of Virginia has recognized an exception to the general rule in fraud cases where a court, acting as a chancellor, may award attorneys' fees where it would otherwise be inequitable. *Id.* at 301 (concluding that without an award of attorneys' fees, the defrauded party's victory "would have been hollow"); *see also C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 359 F. Supp. 2d 497, 503 (E.D. Va. 2005) (interpreting *Bershader* exception as motivated by avoidance of a hollow victory).

The jury's award of $500,000 in compensatory and $100,000 in punitive damages would not impose a "hollow victory" on the plaintiff without an award of attorneys' fees and, based on all the facts and circumstances of this case, the Court concludes that the general rule against awarding attorneys' fees should apply.

For the reasons stated above, it is hereby

ORDERED that the Defendant's Motion for Judgment as a Matter of Law or, in the alternative, for Remittitur of Punitive Damages [Doc. No. 134] be, and the same hereby is, DENIED; and it is further

ORDERED that Plaintiff's Motion for Attorney's Fees [Doc. No. 131] be, and the same hereby is, DENIED.

5

The Clerk is directed to forward copies of this Order to all counsel of record.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 24, 2014

6